# In the District Court of the United States
## For the District of South Carolina
### BEAUFORT DIVISION

| | |
|---|---|
| Charles B. Young, #267823, ) | |
| ) | Civil Action No. 9:06-0369-GRA-GCK |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Colie L. Rushton, McCI; and ) | **OF THE MAGISTRATE JUDGE** |
| Henry McMaster, Attorney General ) | |
| of the State of South Carolina, ) | |
| ) | |
| Respondents. ) | |

## I.    INTRODUCTION

The Petitioner, Charles B. Young ("Petitioner" or "Young"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code, Section 2254. By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. The Respondents have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

## II.    *PRO SE* PETITION

Young is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915, 28

U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

   *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.    PROCEDURAL HISTORY IN STATE COURT

#### A.  Proceedings in the Court of General Sessions

During the May 2000 term of the Court of General Sessions for York County, the grand jury returned indictments charging Petitioner with the following four offenses:  conspiracy to distribute crack cocaine (January 20, 2000) (00-GS-46-1730); distribution of crack cocaine-3rd offense (February 8, 2000) (00-GS-46-1731); distribution of crack cocaine within proximity of a school (February 8, 2000) (00-GS-46-1732); and conspiracy (drugs) (February 8, 2000) (00-GS-46-1733).

A hearing was held on June 30, 2000 before the Honorable Henry F. Floyd, Circuit Court Judge.  Young was represented by Lisa Collins of the York County Public Defenders' Office. Judge Floyd told Young that his maximum exposure as to the four indictments was 75 years imprisonment and $210,000.00 in fines; if he went to trial and were found guilty on the three February 8 charges and the sentences were to run concurrently, he could receive up to thirty years.  Furthermore, if he were found guilty on the January 20 charge, he would receive an additional sentence.  The Petitioner entered a guilty plea to all charges.  *See* [6-11] at pp.5-25. Judge Floyd sentenced Young as follows:

- Conspiracy to distribute crack cocaine (January 20, 2000) (# 1730):  15 years and $50,000 concurrent.  *See* [6-12] at 50-51;

- Distribution of crack cocaine-3rd offense (February 8, 2000) (# 1731):  25 years and $100,000 concurrent.  *See* [6-12] at 53-54;

- Distribution of crack cocaine within proximity of a school (February 8, 2000) (# 1732):  15 years and $10,000 concurrent.  *See* [6-12] at 56-57; and

- Conspiracy (February 8, 2000) (# 1733):  15 years and $50,000 concurrent.  *See* [6-12] at 59-60.

The Petitioner filed a timely notice of appeal before the South Carolina Supreme Court. On January 2, 2001 an Initial *Anders* Brief of Appellant was filed by Robert M. Pachak,

Assistant Appellate Defender, of the South Carolina Office of Appellate Defense.  Through

counsel, Young raised one issue for review:

> Whether appellant's guilty plea complied with the mandates
> set forth in *Boykin v. Alabama*?  *See* [6-2] at 3.

Thereafter, on February 5, 2001, Young executed an affidavit stating that he had consulted with

his counsel and requested that the South Carolina Office of Appellate Defense not appeal his

conviction.  In that affidavit, Young asserted that he had made the decision on his own after

consulting with his lawyer, he understood he could appeal his conviction if he wanted to, and

that his attorney from the Office of Appellate Defense would assist him in his appeal if he

desired such assistance.  [6-3]

On February 27, 2001, the South Carolina Court of Appeals entered an Order of

Dismissal and Remittitur in the matter.  The Court concluded that "[i]t appears that Appellant,

with full understanding of all possible consequences of this action and with agreement of

counsel, wishes to withdraw the appeal and moves the Court for an order dismissing the appeal."

Accordingly, Young's appeal was dismissed and the case was remitted to the Clerk of Court for

York County.  [6-4]

## B.  Young's Application for Post-Conviction Relief

The Petitioner timely filed an application for post-conviction relief ("PCR") on March

14, 2001, in which he raised two grounds for relief:

> 1.    My guilty plea was involuntarily and unknowingly entered in violation of the
>       Fourteenth Amendment.
>
> 2.    I received ineffective assistance of counsel in violation of my Sixth Amendment right to
>       counsel.  *See* [6-11] at 32.

The Petition also argued that there was a double jeopardy violation as to the indictments

numbered 1731 and 1733.  *See* [6-11] at 35-36.  The State made its Return on November 6, 2001.

*See* [6-11] at 31-37.

An evidentiary hearing was convened on December 19, 2002 before the Honorable Lee

S. Alford, Circuit Court Judge.  The Petitioner was present and was represented by Adrian

Cooper of the York County Bar.  The State of South Carolina was represented by Jeanette E. Ciabattari, Assistant Attorney General.  During the evidentiary hearing, testimony was received from the Petitioner, from the Petitioner's wife, Joan Young, and from Lisa Collins, Young's plea attorney.  *See* [6-11] at 44-84 *and* [6-12] at 1-41.

On February 20, 2003 Judge Alford entered his written Order of Dismissal denying relief in the matter.  *See* [6-12] at 42-49.  The Court's Order specifically addressed the following issues:

    I.  Ineffective Assistance of Counsel

        1.  Failing to investigate the case and failing to interview witnesses.

        2.  Failing to make a motion to require the State to elect between charges of distribution of crack cocaine and conspiracy to distribute crack cocaine.

        3.  Threatening Applicant by telling him that if his wife testified for the Applicant at his trial she would receive a ten year sentence, which rendered Young's guilty plea involuntary.

The Order further addressed Young's claim that his guilty plea was involuntary because he was under the influence of drugs or alcohol at the time of his plea.

On May 19, 2004, the Petitioner, through his counsel, Assistant Appellate Defender Tara S. Taggert, appealed to the South Carolina Supreme Court from the denial of PCR by filing a Petition for Writ of Certiorari.  [6-5]  In the Petition, Ms. Taggert asserted one ground for relief:

    Whether the lower court erred in ruling that petitioner received effective assistance of counsel when he received a twenty-five rather than a fifteen year sentence by pleading guilty.

Ms. Taggart also filed a *Johnson* Petition to be relieved as counsel.  [6-5]  On June 30, 2004, Young filed a *pro se* Petition requesting a Writ of Certiorari.  [6-6]  Almost one year later, on May 5, 2005, the Court entered an order denying the Petition for Writ of Certiorari, and granting counsel's request to withdraw.  [6-7]  Young filed a *pro se* Petition for Rehearing on May 19, 2005, which was denied on June 3, 2005, and on that same date, the Remittitur was entered.  [6-8; 6-9; 6-10]

## IV.  FEDERAL COURT HISTORY

### A.  Young's Petition for a Writ of Habeas Corpus

Young is presently confined to the McCormick Correctional Institution ("MCI") of the South Carolina Department of Corrections ("SCDC") pursuant to orders of commitment from the Clerk of Court for York County.  Young filed this Petition for a writ of *habeas corpus* (the "Petition") on February 2, 2006 against Colie Rushton, Warden of MCI, and Henry McMaster, the Attorney General of the State of South Carolina (collectively, the "Respondents").[1]  [1-1]. The Petition set forth four (4) grounds for relief, which are included in their entirety below:

**Ground One:**   Guilty plea was involuntary and unknowingly entered in violation of the Sixth and Fourteenth Amendments.

   Supporting Facts:   Plea was induced by counsel's own statement to Petitioner by threat that prosecution threaten to prosecute Petitioner's wife with extreme prejudice and excessive sentence.

**Ground Two:**   Received ineffective assistance of counsel in violation of Sixth Amendment right to counsel.

   Supporting facts:   Counsel failed to investigate the factual circumstances of the case and counsel was only interested in securing guilty plea at insistence of prosecution.

**Ground Three:**   Petitioner's convictions and sentences are in violation [of the] Fifth Amendment Double Jeopardy Clause Prohibition.

   Supporting facts:   Court allowed Petitioner to plead to three distinct charges and Petitioner received three separate sentences despite same crime on same time, place, and date.

**Ground Four:**   The trial court lacks subject matter jurisdiction to accept Petitioner's guilty plea.

   Supporting facts:   Court did lack subject matter jurisdiction because indictment was not file[d] with Clerk of Court; indictment did not elements to put Petitioner on notice. [sic]

On March 3, 2006, the undersigned issued an Order which authorized service on the Respondents and notified Young of the change of address rule.  [3-1]  Thereafter, in response to

---

[1]   Young has the benefit of the holding in Houston v. Lack, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition.

Young's Petition for *habeas corpus* relief, the Respondents filed a Return and Motion for Summary Judgment (the "Motion for Summary Judgment") on April 24, 2006.  [6-1; 7]

The undersigned issued an Order on April 25, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Young of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Motion for Summary Judgment.[2]  [9-1]  On May 30 2006, Young filed a pleading in Opposition to Respondents' Motion.  [10-1]

### B.  Summary Judgment Standard

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:  "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.

As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of

---

[2] The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case.  The same procedure has been held to apply in federal *habeas corpus* cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## C.  Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his state court remedies:  "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in *habeas*. Claims not so raised are considered defaulted." *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b). This Court's exhaustion requirements under Section 2254 are fully set forth in *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4th Cir.), *cert. denied*, 522 U.S. 833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims.  Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]

> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court.  The burden of proving that a claim has been exhausted lies with the petitioner.

> The exhaustion requirement, though not jurisdictional, is strictly enforced[.] (Citations omitted)

Respondents concede by Brief that Young's first, second, and third allegations were essentially raised in the state PCR proceedings, and thus are exhausted.  As to the fourth allegation, Young sets forth a subject matter jurisdiction claim contending that the indictments

were not filed, which he argues was an issue raised in his *pro se* response to the *Johnson* petition filed on July 2, 2005.  Respondents concede that state remedies were exhausted by that claim and presentation.

### D.  Application of the Antiterrorism and Effective Death Penalty Act of 1996

Because Young filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of his collateral attack on his criminal conviction is governed by the parameters set forth in the AEDPA, which amended Section 2254.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  As amended, Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

With respect to the first prong of the analysis under Section 2254(d), the United States Supreme Court has explained that a state court adjudication is "contrary to" clearly established Federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  An "unreasonable application" of Federal law will be found "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 412-413.  An "unreasonable application" likewise will be found if the state court "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled.  *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (opinion of Kennedy, J.).  Yet as *Williams* teaches, a state court's "unreasonable application" of the law

informs the federal court to the extent that the latter "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Bates v. Lee*, 308 F.3d 411, 417 (4th Cir. 2002), *cert. denied,* 538 U.S. 1061 (2003), *quoting Williams*, 529 U.S. at 411.  The Fourth Circuit has held that this application of federal law must be "objectively unreasonable."  *Oken v. Corcoran*, 220 F.3d 259, 264 (4th Cir. 2000) (noting that the Supreme Court in *Williams* "adopted" the holding in *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999) that the "unreasonable application" inquiry is an objective inquiry.).

Turning to Section 2254(d)(2), the proper analysis for establishing whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness" and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence."  *See* 28 U.S.C. § 2254(e)(1). The federal courts must accord "considerable deference in their review of state *habeas* proceedings."  *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005), *citing (Terry) Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

Applying the AEDPA's standard, this Court's analysis should focus on whether the state courts properly applied the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362 (2000) ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")  In *Strickland*, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.  To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Turner v. Bass*, 753 F.2d 342, 348 (4th Cir. 1985), *quoting Strickland*, *(reversed on other grounds*, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced by the error. *Strickland* requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland,* 466 U.S. at 694-95.

Where the petitioner has entered a plea of guilty, ineffective assistance of counsel claims may be asserted in limited circumstances. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson*, 397 U.S. 759 (1970)]." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel with respect to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, *i.e.*, the first prong of the *Strickland* test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

## E.  Discussion of Young's Grounds for *Habeas* Relief

## Ground One

> Guilty plea was involuntary and unknowingly entered in violation of the Sixth and Fourteenth Amendments.  *See* [1-1] at p. 6.

First, Young alleges that his plea was involuntary because he contends his counsel threatened him by telling him that the State "threatened to prosecute [his] wife with extreme prejudice and excessive sentence."  *See* [1-1] at 6.  At the PCR hearing, Young testified that his attorney, Ms. Collins, advised him that if his wife testified in his favor at his trial, his wife would receive a ten year sentence.  Respondents contend that Young has failed to show under Section 2254(d) standards that he is entitled to federal *habeas* relief, and this Court agrees.

In addressing the issue of whether Ms. Collins provided ineffective assistance of counsel during the plea hearing, Judge Alford correctly applied the *Strickland* test when making the following Findings of Fact and Conclusions of Law, which merit quotation at length:

> Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel.  First, the Applicant must prove that counsel's performance was deficient.  Under this prong, attorney performance is measured by its "reasonableness under professional norms."  *Cherry v. State*, 300 S.C. 115, 117, 385 S.E.2d 624, 625 (1989), *citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984).  Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Cherry*, 300 S.C. at 117-18, 386 S.E.2d at 625.  With respect to guilty plea counsel, the Applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985).

> Failure to Investigate - Interview Witnesses- Threatening Witness

> The Applicant claims guilty plea counsel was ineffective for failing to investigate his case and for failing to interview witnesses, specifically Joanne Young (his wife) and Donald Moore.  Guilty plea counsel testified that the Applicant always wanted to plead guilty and was not interested in a jury trial.  Further, the Applicant testified at the PCR hearing that he did discuss the evidence the State had against him with guilty plea counsel prior to his plea.  "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result."  *Moorehead v. State*, 329 S.C. 329, 496 S.E.2d 415 (1998). This Court finds that the Applicant's allegation is only supported by "mere speculation as to the result."  *Id.*  The Applicant testified he reviewed the evidence against him as well as

the surveillance tape[3] involved in the investigations which was incriminating to the Applicant with guilty plea counsel.

The Applicant also claims guilty plea counsel was ineffective for failing to contact Joanne Young (the Applicant's wife) and Donald Moore as potential witnesses. [Donald Moore was not present at the hearing but Joanne Young was present and testified.] However, guilty plea counsel testified that she had never heard of Donald Moore until the PCR hearing and that she would have contacted Mrs. Young if the Applicant had asked her to do so. Guilty plea counsel further testified that she did speak with Shirley Lumpkin (a family member) who was concerned about the Applicant.

Guilty plea counsel further testified that she never threatened the Applicant by telling him his wife would receive jail time if she testified for the Applicant during his trial. This is substantiated by Mrs. Young's testimony where she testified that she never had contact with guilty plea counsel and that she only became aware of this alleged threat after the Applicant pled guilty and he told her. The Applicant has failed to prove that he ever requested that guilty plea counsel should interview his wife or Donald Moore. He has further failed to prove that Mrs. Young or Mr. Moore's testimony would have been helpful to him or that such information was given to guilty plea counsel.

This Court has had the opportunity to judge the credibility of the witnesses and find[s] guilty plea counsel's testimony more credible than that of the Applicant. This Court finds that guilty plea counsel, who has both prosecuted and defended criminal cases in this Court, to be ethical, honest, and forthright in all matters.

Therefore, this Court finds that guilty plea counsel was not ineffective. This Court further finds that the Applicant has failed to carry his burden by proving he was prejudiced by [guilty plea counsel's] performance. *See* [6-12] at 44-46 (footnote and other bracketed language added by the undersigned).

---

[3]        Petitioner, in his brief in Opposition to Respondents' motion for summary judgment, calls the Court's attention to the use of the word "surveillance" by the PCR Judge in his Order. The evidence of record indicates that there were two audio-tapes of controlled purchases of drugs, but not a "surveillance" tape. Petitioner argues that it was never conclusively established that he was involved in a controlled purchase of any drug. The undersigned considers that PCR court's use of the word "surveillance" is merely a scrivener's error and is not of any significance.

As Young's plea counsel, Ms. Collins testified at the PCR hearing, she had listened to both audiotapes and had taken copious notes of the contents, which she shared with Petitioner. *See* [6-12] at 6. Ms. Collins stated that with respect to the first audiotape, the confidential informant ("C-I") went to Petitioner's home, made a drug purchase, and then said: "All right, I appreciate it, appreciate that Money Young[.]" *See* [6-12] at 7. The record reflects that Petitioner's nickname was "Money". With respect to the second buy, Ms. Collins testified that on February 8, 2000, the CI stated on the audiotape: "I'm going to Money Young's house" and then "[Mrs. Young] answers the door" and after some conversation and the drug purchase is made in the Young' house by the C-I. Ms. Collins, reading from her notes, stated: "and the CI says, Hey Money, you going to be around?". After the C-I left the Youngs' home, the C-I stated on the tape: "Money was the one that made the transaction[.]" *See* [6-12] at 9-10.

The Court is of the opinion that Judge Alford made a reasonable determination of the facts which is entitled to a presumption of correctness.  At the plea hearing Young first confirmed under oath that he had not been threatened in any manner.  *See* [6-11] at 15-16. Second, Young stated he was satisfied with the time, effort, advice, and representation provided by Ms. Collins.  *See* [6-11] at 16.  At the time of the plea, it was represented by Ms. Collins that Mrs. Young was one of the individuals involved in the crack cocaine sale in the Youngs' home, that Mrs. Young had no prior record, and had already pled and received probation for her participation.  *See* [6-11] at  20.  Earlier in the plea colloquy, when the factual basis of the plea was discussed, Mrs. Young's role in the conspiracy of February 8, 2000 was described and her known involvement in the crime was directly addressed.  *See* [6-11] at 18-19.

At the PCR hearing, Ms. Collins, testified that Young indicated a desire to plea at the outset of her representation.  *See* [6-12] at 6.  Ms. Collins stated that during the plea, she had mentioned the fact that Mrs. Young had received probation in an effort to persuade the court to give Young a lesser sentence.  *See* [6-12] at 18-19.

Furthermore, Ms. Collins testified that she had never threatened Young and that the first time she had heard about his wife being threatened with a ten year sentence was at the PCR hearing.  *See* [6-12] at 18.  Upon questioning by the PCR court, Ms. Collins confirmed that she had never told Young that if his wife testified in his favor at his trial that his wife would receive a sentence of ten years.  *See* [6-12] at 32-35.  Significantly, Mrs. Young testified at the PCR hearing that no one, except her husband, had ever mentioned that she would be threatened with jail time if she testified for her husband at his trial.  *See* [6-11] at 83-84 *and* [6-12] at 1.

In the Order of Dismissal, the PCR court found Ms. Collins' testimony to be credible and Young's testimony to the contrary to not be credible.  *See* [6-12] at 46.  The evidence in the record reflects that Young entered into his plea agreement freely and voluntarily.  Young has failed to establish that his counsel erred in her representation of him; even if she had erred, there is nothing in the record to suggest that "that there is a reasonable probability that, but for

counsel's errors, [Young] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Petitioner's first ground for *habeas* relief should be denied and dismissed.

## Ground Two

> Received Ineffective Assistance of Counsel in violation of 6th Amendment right to counsel. Counsel failed to investigate the factual circumstances of the case and counsel was only interested in securing a guilty plea at the insistence of the prosecution. *See* [1-1] at 7.

Next, Young alleges that his attorney was ineffective in failing to investigate the facts and circumstances of the case. This issue was specifically addressed in Judge Alford's Order of Dismissal of Young's application for PCR. *See* [6-12] at 44-45. In his thorough and well reasoned Order, it is clear to the undersigned that Judge Alford reasonably applied the United States Supreme Court precedent in *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart*, 474 U.S. 52 (1985) in determining that Ms. Collins' representation of Young prior to and during the guilty plea could not be characterized as ineffective assistance of counsel. *See* [6-12] at 43-44. Ms. Collins testified that from the outset, Young wanted to plead to the charges, as he had a significant history of prior convictions and had just been released from jail a few months earlier on a second drug offense. *See* [6-11] at p. 81 *and* [6-12] at 22, 23, 30-31. Ms. Collins stated: "This was never going to be a trial from his communication to me. He never said to me, I want a trial." *See* [6-12] at 30. Ms. Collins was adamant that the decision to plead guilty and to plead "straight-up" was Young's decision, particularly in order to avoid a trial before Judge Hayes. *See* [6-12] at 15-21. Significantly, Ms. Collins was convinced that under the "hand of one-hand of all" theory, Young would be convicted of the offenses. *See* [6-12] at 20.

With respect to the investigation conducted by Ms. Collins, she listened to the tape recording made by a confidential informant and another tape recording made by an undercover officer; these recordings formed the basis for two of the indictments. Ms. Collins had taken

extensive notes of these tape recordings, which she then discussed with Young.  *See* [6-12] at 6-11; 44-45.  As mentioned above, Ms. Collins had spoken with Shirley Lumpkin, who had helped raise Young, regarding Young's background and character.  *See* [6-12] at 12-14.  Ms. Collins denied Young's claim that he had asked her to speak to his wife, who was separately represented by Steve Shusterman, so she did not attempt to do so.  *See* [6-12] at 10, 14.  As has been observed, there are limits to any investigation, based on time, resources, and relevance; indeed, "*Strickland* does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client."  *Green v. French*, 143 F.3d 865, 892 (4th Cir.1998), *abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362 (1998).  Young cannot argue that Ms. Collins should have found additional witnesses, as Ms. Collins testified that Young never gave her the names of any witnesses, or asked her to seek out any witnesses, particularly Donald Moore.  *See* [6-12] at 6, 10, 12, 14, 21-22.

In conclusion, the record reflects that Ms Collins' investigation prior to the plea was reasonable based upon Young's own statements to her.  Again, under the facts of this case, there is no reason for this Court to find that any alleged errors of counsel would have caused Young to insist on going to trial in this case.  *See Hill*, 474 U.S. at 59.  Accordingly, Petitioner's second ground for *habeas* relief should be denied and dismissed.

### Ground Three

Petitioner's convictions and sentences are in violation [of the] Fifth Amendment
Double Jeopardy Clause Prohibition.  *See* [1-1] at 9.

In his *habeas* Petition, Young contends that Indictment # 1731 and Indictment # 1733 are in violation of the double jeopardy clause because both charges arise from a single underlying incident, and the State would have to rely on the same facts to prove the two offenses: Indictment #1731 was for distribution of crack cocaine-3[rd] offense, on February 8, 2000, in violation of S.C. Code § 44-53-375, and Indictment # 1733 was for conspiracy (drugs) on February 8, 2000, in violation of S.C. Code § 44-53-420.  *See* [6-12] at p p. 53-55 *and* 59-61.

Young raised this issue in state court, in his *pro se* petition for a writ of certiorari to the South Carolina Supreme Court in June 2004.  [6-6]

Young argues that he should not be punished for two crimes stemming from the same conduct.[4]  In an allegation related to his claim of ineffective assistance of counsel, Young also argues that his counsel was deficient because Ms. Collins failed to make a motion to have the State elect to charge Young under only one statute.

At the PCR hearing, Ms. Collins testified that had she taken the case to trial, she could have made a motion to elect, but that she did not believe that Young's pleading guilty to both charges prejudiced him, because the sentences were concurrent.  *See* [6-12] at 24.  Ms. Collins explained that she did not believe the two indictments posed an issue of double jeopardy, because it was not a successive prosecution.

The Double Jeopardy clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  *State v. Gordon,* 356 S.C. 143, 149, 588 S.E.2d 105, 108 (2003)*, citing State v. Nelson*, 336 S.C. 186, 519 S.E.2d 786 (1999); *and State v. Easler*, 327 S.C. 121, 489 S.E.2d 617 (1997).  A substantive crime and a conspiracy to commit that crime are not the "same offense" for double jeopardy purposes.  *United States v. Felix*, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992).  Conspiracies and the substantive offenses committed in the course of those conspiracies may be charged separately.  *United States v. Love*, 767 F.2d 1052, 1062 (4th Cir. 1985), *citing Callanan v. United States*, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

Since Young is wrong in his Double Jeopardy Clause analysis, any claim of ineffective assistance of counsel on this basis must fail.

---

[4]     *See* Petitioner's Opposition [10-1] at 11-12.

## **Ground Four**

The trial court lacked subject matter jurisdiction to accept Petitioner's guilty plea because the indictment was not filed with Clerk of Court and did not sufficiently put Petitioner on notice as to the elements of the crime.

Lastly, Young argues, on two independent grounds, that the trial court lacked subject matter jurisdiction to accept his guilty plea with regard to Indictment #1733. First, the indictment was not filed in the Clerk's Office. Second, the indictment failed to adequately set forth the elements needed to inform Young of the nature of the charges he faced.

Neither of Young's claims is cognizable in a federal *habeas* action. As a threshold matter, Young raises issues of state law, not federal law, and the state court is the final arbiter on matters of state law, especially matters related to its own jurisdiction and procedure. *Habeas corpus* relief is available to a state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "'[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Accordingly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.*, 502 U.S. at 67-68. A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) *and Wright v. Angelone*, 151 F.3d 151, 156-158 (4th Cir. 1998). As this issue pertains to the state court's jurisdiction, this issue should be dismissed.

## <u>RECOMMENDATION</u>

For the foregoing reasons, it is recommended that the Respondents' Motion for Summary Judgment **[7-1] should be granted, and that Young's Petition [1-1] should be denied and dismissed.**


S/George C. Kosko
United States Magistrate Judge

September 11, 2006

Charleston, South Carolina

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
<u>& The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but <u>not</u> <u>thereafter</u>**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

**A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  \* \* \*  This duplication of time and effort wastes judicial**

> **resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating**
>
> **only 'I object' preserves no issue for review.  * * *  A district judge should not have**
>
> **to guess what arguments an objecting party depends on when reviewing a**
>
> **[magistrate judge's] report.**

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

      **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.**  *See* <u>Wright v. Collins</u>, <u>supra</u>; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

> **Larry W. Propes, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**